UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STEPHEN NAGENGAST,

    Plaintiff/Counter-Defendant,

v.

CROWE, CHIZEK AND COMPANY, LLP GROUP LONG TERM DISABILITY INSURANCE PLAN,

    Defendant/Counter-Plaintiff.

_____/

Case No. 1:05-CV-533

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Stephen Nagengast and Defendant Crowe, Chizek and Company, LLP Group Long Term Disability Insurance Plan's competing Motions for Entry of Judgment under section 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") of 1974. 29 U.S.C. §§ 1001-1461. After conducting the review contemplated by *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 616-20 (6th Cir. 1998), the Court has considered the administrative record, made specific findings of fact, articulated its conclusions of law, and will enter Judgment in favor of Defendant.

**I.     FINDINGS OF FACT**

Plaintiff managed the Grand Rapids, Michigan office of the accounting firm Crowe, Chizek and Company, LLP ("Crowe"), where he also held an equity partnership interest in the firm. In this capacity, Plaintiff worked roughly 60 to 80 hours per week for Crowe and was paid $379,000 a year for his services. Defendant is an ERISA welfare benefit plan ("Plan"), 29 U.S.C. § 1002(1), for participating Crowe employees. Plaintiff participated in the Plan. Benefits under the Plan were

insured by the Canada Life Assurance Company ("Canada Life"), to whom Crowe delegated the authority to serve as Plan administrator.

The Plan provides for disability benefits when a participant becomes partially or residually disabled. The Plan defines a residual disability as satisfying all of the following:

(a) You are unable to do the Material and Substantial Duties of Your Own Occupation; *and*
(b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; *and*
(c) Your Work Earnings are between 20% and 80% of Your Indexed Pre-Disability Monthly Earnings.

(Dkt. No. 15, Admin. R. at 35) (emphasis in original). Central to the dispute in this case is subparagraph (a) of the residual disability definition. The Plan defines subparagraph (a)'s material and substantial occupational duties to mean those tasks that:

(a) are normally required for the performance of Your own or any occupation; *and*
(b) cannot be reasonably omitted or modified, except that Canada Life will consider You able to perform the Material and Substantial duties if You are working or have the capability to work 40 hours per week.

(*Id.* at 32) (emphasis in original). "Own occupation means the duties that You regularly performed for which You were covered under this Policy immediately prior to the date Your Disability began. The occupation may involve similar duties that could be performed with Your Employer or any other employer." (*Id.*).

In January 2003, Plaintiff was diagnosed by Dr. Gary Humphries, M.D.,[1] as suffering from ankylosing spondylitis.[2] In light of his condition, Dr. Humphries recommended Plaintiff work no

---

[1] Dr. Humphries specializes in internal medicine.

[2] Ankylosing spondylitis is a chronic, progressive, and inflammatory form of arthritis that primarily effects the spine and sacroiliac joints, causing spinal stiffness and pain. Severe cases result

more than 40 hours per week. (*Id.* at 639). Plaintiff then submitted a claim for residual disability benefits under the plan. Plaintiff also reduced his work hours by 40 percent, divested himself of his full equity partnership interest in the accounting firm, and gave up his managerial responsibilities. Corresponding to his reduced role in the firm, Plaintiff's salary was reduced to $230,000 a year.

Canada Life initially approved Plaintiff's application for disability benefits in April 2003. On August 1, 2003, Crowe cancelled the Canada Life policy insuring the Plan in favor of a different insurer. On August 20, 2003, Canada Life revisited Plaintiff's disability claim and determined that he was provided disability benefits in error.[3] Canada Life found that because Plaintiff could still perform the material and substantial duties of his occupation, he was not residually disabled.[4] Plaintiff appealed this decision and on January 5, 2004, Canada Life affirmed its previous decision to deny benefits. Canada Life affirmed its previous decision based primarily on a November 15, 2003 letter from Dr. Humphries and information from Crowe, which indicated that despite Plaintiff's condition, he could still work a 40-hour week. The appeal was also affirmed on the additional ground that the medical information did not support Plaintiff's claimed physical inability to perform his occupation.

---

in a condition known colloquially as "bamboo spine," where the spinal joints have fused together preventing spinal mobility.

[3] Under the Plan, Canada Life had the right to periodically audit an applicant's claim to disability payments. Canada Life determined that Plaintiff was provided $50,193.46 in error.

[4] Canada Life based that decision on a misquoted provision of the Plan's definition of Material and Substantial duties. The original denial letter cited Plaintiff's ability to work 24 hours a week. As noted above, the proper weekly threshold of hours worked under the Plan is 40 hours per week. Canada Life later replaced its original denial letter and cited the correct weekly hour threshold.

On January 28, 2004, Plaintiff again appealed Canada Life's decision to deny him benefits. That same day, William Fether, (a Senior Vice President for Sky Insurance, Inc.) also wrote a letter in support of Plaintiff's appeal. Canada Life's Medical Director, Dr. John Wolff, M.D., reviewed Plaintiff's claim and recommended an independent medical examination. UNIVAL Appointment Administration arranged for Plaintiff to be examined by Dr. Henry Ottens, M.D.[5] Dr. Ottens agreed with Dr. Humphries' recommendation that Plaintiff should limit his work week to 40 hours, but did not otherwise add any limitations concerning the performance of accounting or related tasks. Consequently, Canada Life denied Plaintiff's second appeal of his disability claim.

Plaintiff then brought this action alleging Defendant wrongfully denied him benefits under the Plan.[6] *See* 29 U.S.C. § 1132(a)(1)(B). Defendant answered Plaintiff's Complaint and asserted a Counterclaim that it had overpaid Plaintiff $50,193.46, representing the period from when it erroneously approved Plaintiff's disability claim until it ceased benefit payments. *Id.* § 1132(a)(3).

## II.  CONCLUSIONS OF LAW

The Sixth Circuit Court of Appeals has held that district courts are not to use summary judgment procedures when resolving ERISA actions to recover benefits. *Wilkins*, 150 F.3d at 616. Rather, courts are to review such claims on the administrative record before the plan administrator and render findings of fact and law. *Id.* at 619. The parties' arguments concerning the relevance or importance of the evidence should be considered, but further evidence that was not before the plan administrator should not be reviewed absent a procedural due process challenge. *Id.* As to the

---

[5] Dr. Ottens is an orthopedist and a fellow in the American Academy of Orthopedic Surgeons.

[6] Plaintiff also requested the Michigan Office of Financial and Insurance Services investigate Canada Life's denial of his claim. The status of that investigation at this time is unknown.

propriety of the plan administrator's decision, courts will either conduct a *de novo* or arbitrary or capricious review. *Id.* at 616 & n.4.

### A. The Appropriate Standard of Review

The parties have devoted significant argument concerning the proper standard of review the Court should employ. The parties agree that when a benefit plan bestows upon the plan administrator discretion to determine eligibility for benefits or construe the terms of the plan, those decisions will only be overturned if found to be arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, without such discretion a plan administrator's disability determinations are reviewed *de novo*. *Id.* The parties disagree on whether the Plan invested Canada Life with this kind of discretion.

The Court of Appeals has read *Firestone* to require that a plan "expressly give discretionary authority to the administrator." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990). However, the Court of Appeals has also acknowledged that a finding of discretion does not depend on the plan's use of the word "discretionary" or any other specific recital. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1571 (6th Cir. 1992). Moreover, the grant of discretion is not an all-or-nothing proposition, in that the plan can give administrative discretion with respect to some decisions but not others. *See Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir. 1991).

The Plan states that "[t]he Plan Administrator grants to Canada Life full discretion to interpret all claims evidence and materials, and to make all claims decisions under the contract, except as otherwise provided by law." (Admin. R. at 67). Necessarily within the ambit of the phrase "all claims decisions" would of course lie the discretionary authority to issue a final decision as to whether a claimant is eligible for benefits. When a plan administrator is the final arbiter of the

claimant's eligibility for benefits, it has been granted discretion under the plan. *Johnson*, 970 F.2d at 1572; *Baker v. UMWA Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Thus, the Court deems that because Canada Life has been given final decision making authority under the Plan, it has therefore been granted discretion within the meaning of *Firestone* and its progeny. Accordingly, the Court will apply the arbitrary and capricious standard of review.[7]

In *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000), the Court of Appeals offered a succinct summary of this standard.

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *See Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693.

After resolving the proper standard of review, the Court is now ready to address the merits of Plaintiff's denial of benefits under the Plan.[8]

---

[7] Plaintiff also suggests that because the summary plan description does not confer any discretion upon the Plan administrator, the Plan administrator had no discretion to delegate to Canada Life. The Court is not swayed by this argument either. The summary plan description indicates that: "[f]unctions performed by the Plan Administrator include: . . . determination of eligibility of individual claimant for receipt of benefit." (Admin. R. at 72). The summary plan description is silent concerning the Plan administrator's discretion. "[W]hen a summary plan description is silent as to an administrator's discretion, the language in the plan governs." *Brooking v. Hartford Life & Acc. Ins. Co.*, No. 04-6478, 2006 WL 357881, *3 (6th Cir. Feb. 16, 2006) (referencing *Sprague v. Gen. Motor Corp.*, 133 F.3d 388, 401 (6th Cir. 1998)). As discussed above, the Plan granted Canada Life that discretion and controls over the silent summary plan description.

[8] The Court deems the administrative record in this case to be complete and without need for supplement, except to the extent explained in note 9.

### B.   Application of the Arbitrary and Capricious Standard to Canada Life's Denial of Plaintiff's Benefits Claim

Plaintiff contends that the principles of conflict of interest and contract ambiguity should color the Court's review. Each contention will be considered in detail before considering whether Canada Life wrongfully denied Plaintiff benefits under the Plan.

#### 1.   Conflict of Interest

Plaintiff charges Canada Life with conflict of interest because of the timing of his denial of benefits, 19 days after Canada Life was dropped as the insurer of the Plan. Plaintiff relies on the affidavit of Fether which states that Canada Life Service Representative Jennifer Tanner told him, in reference to Canada Life's denial of Plaintiff's claim, "that's what happens when you change carriers."[9] (Dkt. No. 26, Fether Aff., ¶ 1). Furthermore, Plaintiff posits that Canada Life's original decision to pay the claim, and then its subsequent denial, illustrates a conflict. Finally, Plaintiff suggests something untoward in Canada Life's denial of benefits on appeal based on the additional ground asserted that—along with its belief that Plaintiff could work a 40-hour week—it did not consider him physically unable to perform his occupation.

Canada Life has responded to each allegation of conflict. Canada Life asserts the timing of its denial (and its flip-flop on Plaintiff's claim) is not suspicious and that it initially overlooked Plaintiff's erroneous payment of benefits because his claim was transferred internally due to a reorganization of Canada Life's claims department. When the new claims handler received her new

---

[9] The Court finds Plaintiff's belief that Canada Life was conflicted properly raises questions of whether he was accorded procedural due process (*i.e.*, alleged bias). Therefore, the Court will review additional evidence not before the Plan administrator. *Wilkins*, 150 F.3d at 619. Defendant's Motion to Strike this evidence will be denied and the Court will review both parties' evidentiary submissions.

assignments under the reorganization, she audited all her new files and caught the error. As for Tanner's allegedly damning statement, she was deposed and denies making any such statement about denying Plaintiff's claim in retaliation for changing carriers. (Def.'s Mot., Ex. 2). Responding to the additional ground for denial on appeal, Canada Life accounts for this as simply being thorough and giving Plaintiff another reason explaining why his appeal was denied.

On the balance, the evidence of conflict is inconclusive; however, when considering that Canada Life both decided whether Plaintiff was eligible for benefits and had to pay those benefits, a conflict is readily apparent. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citing *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 299 (6th Cir. 2005)); *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998)). "'There is an actual, readily apparent conflict . . ., not a mere potential for one' where a company both funds and administers a[] LTD disability policy, because 'it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits.'" *Evans*, 408 F.3d at 299 (quoting *Killian*, 152 F.3d at 521). "*Killian* in effect establishes an irrebuttable presumption that a conflict of interest, or bias if you will, exists whenever the same entity wears both the administrator's hat and the payor's hat." *Schey v. Unum Life Ins. Co. of N. Am.*, 145 F. Supp. 2d 919, 923 (N.D. Ohio 2001). Even so, the presence of a conflict or bias does not alter the Court's standard of review and will simply be considered, along with other factors, when determining if Canada Life's denial was arbitrary or capricious. *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005).

## 2. Contract Ambiguity and the Doctrine of *Contra Proferentum*

Plaintiff contends that the doctrine of *contra proferentum*, a rule of contracts requiring contract ambiguity to be resolved against the drafter, should be applied in his favor. Defendant argues that *contra proferentum* does not apply to ERISA plans reviewed under the arbitrary and capricious standard. Although the Sixth Circuit has strongly hinted that it accepts Defendant's argument, it has yet to offer a full endorsement. *See Mitchell v. Dialysis Clinic, Inc.*, 18 Fed. Appx. 349, 354 (6th Cir. 2001) (given alternate basis for administrator's decision (the basis not relying on ambiguous language) the court declined to reach this question).

Though largely dicta, the *Mitchell* court cited approvingly to *McMahan v. New England Mutual Life Ins. Co.*, 888 F.2d 426 (6th Cir. 1989), a case where the "plaintiff's state law claim for breach of contract—and, therefore, Kentucky's rule of interpreting ambiguous provisions against the drafter—was preempted by ERISA." *Id.* at 354. The court continued to quote: "'[w]e think it clear that subjecting an ERISA fiduciary to the vagaries of state contract law regarding its benefits decisions would create the very real prospect that the fiduciary's administrative scheme would be subject to conflicting requirements in various states . . . . Accordingly, we reject plaintiffs' first argument and hold that the state law claim in this case was within reach of the pre-emption clause.'" *Id.* (quoting *McMahan*, 888 F.2d at 429). The *Mitchell* court further found that the law of this Circuit has not established a rule of contract interpretation "that would contradict the deference paid to an administrator's decision." *Id.* at 353.

Therefore, given *Mitchell*, the Sixth Circuit seems poised to join the Second Circuit's determination that "the rule of *contra proferentum* is limited to those occasions in which this Court reviews an ERISA plan *de novo*." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2nd Cir. 1995);

*see also Masella v. Blue Cross & Blue Shield of Conn. Inc.*, 936 F.2d 98, 107 (2nd Cir. 1991) and *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen. Inc.*, 37 F.3d 55, 61 (2nd Cir. 1994). Thus, this Court finds that the rule of *contra proferentum* inapplicable when the Plan administrator is vested with discretion to determine eligibility for benefits under the Plan. A rule to the contrary would be inconsistent with the Plan administrator's discretion.

Furthermore, the Court does not believe such ambiguity resides in the Plan. Plaintiff assigns ambiguity to the Plan's definition of material and substantial occupational duties, which are specified as tasks that:

(a) are normally required for the performance of Your own or any occupation; *and*
(b) cannot be reasonably omitted or modified, except that Canada Life will consider You able to perform the Material and Substantial duties if You are working or have the capability to work 40 hours per week.

(Admin. R. at 37). Plaintiff attributes ambiguity to the wording "Your own or any occupation." A fair reading of the Plan as a whole reveals that the phrase working 40 hours at "any occupation" was intended to apply to Class 1 employees (rank and file employees earning yearly salaries less than $50,000), whereas the reference to "Your own occupation" concerns Class 3 employees (partners and directors). No other interpretation is reasonable, or as Plaintiff suggests, an executive would not be residually disabled under the Plan if he could push a mail cart for 40 hours a week.

### 3. Canada Life did not Wrongfully Deny Plaintiff Benefits under the Plan

Since Plaintiff can work a 40-hour week, Canada Life's denial of benefits turns on whether Plaintiff can still perform his occupation during those 40 hours. Canada Life characterizes Plaintiff's occupational duties before he was diagnosed with ankylosing spondylitis as sedentary in nature,

including some travel.  Plaintiff describes his occupation pre- and post-illness in the following fashion:

| Pre-Illness | Post-Illness |
|---|---|
| Plaintiff was a full equity partner | Plaintiff is a limited equity partner |
| Plaintiff was the Executive-In-Charge of the Grand Rapids System Group | Plaintiff no longer has this position |
| Plaintiff was the Grand Rapids Sales and Marketing Manager | Plaintiff no longer has this position |
| Plaintiff had firm-wide responsibility for the BAAN Relationship brand | Plaintiff no longer has this responsibility |
| Plaintiff was a member of the firm's Strategic Alliance Committee | Plaintiff is no longer a member of this Committee |
| Plaintiff was the overseer of the firm's Leadership Development Program | Plaintiff no longer has this position |
| Plaintiff's annual compensation was $379,000 | Plaintiff's compensation has been decreased by approximately 40% to $230,000 |

(Pl.'s Br. at 7).  Although these changes appear to be true, they are the obvious and predictable result of Plaintiff's new 40-hour work week.  Plaintiff (and presumably his partners) could not expect to perform the same amount of work as he did before because he must confine his professional activity to 40 hours.  No doctor ever recommended Plaintiff reduce his responsibilities or duties, the evaluating physicians merely recommended a schedule reduction.[10]

Dr. Humphries notes that there are varying degrees of ankylosing spondylitis—debilitating some patients to a point where they cannot get out of bed while slowly robbing other patients of

---

[10] Indeed, neither Dr. Humphries nor Dr. Ottens ever recommended Plaintiff relinquish his equitable partnership interest; cease serving as Sales and Marketing Manager; give up his BAAN relationship brand responsibilities; stop serving on the Strategic Alliance Committee; quit overseeing the Leadership Development Program; or reduce his compensation.  These were business choices either Crowe or Plaintiff made.  The physicians' only recommended Plaintiff reduce his weekly hours performing these duties, not cease performing his duties all together.

mobility over time. Dr. Humphries never claimed Plaintiff was bedridden with disease, rather Plaintiff's condition effected his stamina, pain, and posture. Ultimately, Dr. Humphries found Plaintiff could do his job but only at a rate of 40 hours per week. Similarly, Dr. Ottens' independent medical evaluation concluded that Plaintiff had limited mobility, stiffness, and his condition causes him to expend more energy on routine tasks than others. Dr. Ottens concurred with Dr. Humphries' 40-hour work week limitation. Thus, the medical evidence indicates that Plaintiff can perform all of the duties attendant to his occupation he could before, up to 40 hours a week.

In light of the foregoing, the Court cannot say that Canada Life's decision to deny Plaintiff benefits under the Plan was irrational in light of the Plan's provisions, nor was the decision arbitrary or capricious even when considering Canada Life's apparent conflict of interest. A Judgment will enter in Defendant's favor on Plaintiff's Complaint.

### 4.     Defendant's Counterclaim

Defendant's Counterclaim seeks reimbursement for the benefits paid to Plaintiff from March 31, 2003, to July 31, 2003, and states that "[under] ERISA § 1132(a)(3), the Plan is entitled to be reimbursed in the amount of $50,193.46." (Def.'s Answer at 6). Section 1132(a)(3) allows the Plan "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The Supreme Court has noted that "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2001) (internal citations and quotations omitted) (emphasis in original). The Court further held that

"by its terms [section 1132(a)(3)] only allows for equitable relief [and] because [the plan is] seeking legal relief—the imposition of personal liability on [the participant] for a contractual obligation to pay money—[section 1132(a)(3)] does not authorize this action." *Knudson*, 534 U.S. at 221. Defendant's Counterclaim failed to sufficiently plead any equitable entitlement to reimbursement. Therefore, the Court will dismiss Defendant's Counterclaim for lack of subject matter jurisdiction under section 1132(a)(3).

### 5. Attorney's Fees

Defendant is not entitled to its attorney's fees under 29 U.S.C. § 1132(g). An award of attorney's fees under ERISA is discretionary. *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 860 (6th Cir. 2000). In reviewing such a request, courts are counseled to consider:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936-47 (6th Cir. 1996). None of the factors espoused in *Foltice* warrant an attorney fees award in Defendant's favor. The Court believes Plaintiff did not bring this action in bad faith, the circumstances surrounding his claim are unique and would serve as little deterrent to others, and the position he advanced was not frivolous.

## IV. CONCLUSION

Therefore, the Court will deny Plaintiff Stephen Nagengast's Motion for Entry of Judgment. The Court will grant Defendant Crowe, Chizek and Company, LLP Group Long Term Disability

Insurance Plan's Motion for Entry of Judgment.  Defendant's Counterclaim will be dismissed for want of subject matter jurisdiction.  Defendant's Motion to Strike will be denied and a Judgment consistent with this Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>April 10, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |